**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**NORMAN HOEWISCHER,**

**Plaintiff,**

**-vs-**                                                    **Case No. 3:10-cv-752-J-37MCR**

**SAILORMEN, INC.,**

**Defendant.**

_____/

## ORDER

This cause is before the Court on cross Motions for Summary Judgment (Doc. Nos. 31, 33) and Defendant's *Daubert* motion (Doc. No. 32). After considering the motions, responses, and pertinent portions of the record, the Court **DENIES** both parties' motions for summary judgment and **DENIES** Defendant's *Daubert* motion.

## I. FACTUAL BACKGROUND

Norman Hoewischer ("Plaintiff") brings this action pursuant to Title III of the Americans with Disabilities Act ("ADA"). 42 U.S.C. § 12181 *et seq.* Plaintiff is a Jacksonville, Florida, resident who is confined to a wheelchair. (*Id.* at ¶ 2); (Hoewischer Dep. 8:2-6, May 30, 2012, Doc. No. 38, Ex. C.) Sailormen, Inc. ("Defendant") is a private corporation that owns, leases, or operates a Popeye's restaurant at 430 Blanding Boulevard in Orange Park, Florida. (Doc. No. 1, ¶ 6; Doc. No. 6, ¶ 6.)

Plaintiff's Complaint (Doc. No. 1), filed on August 25, 2010, alleges that

Defendant's failure to remove architectural barriers in its restaurant constitutes unlawful discrimination under the ADA (*Id.* at ¶ 19.) Plaintiff seeks injunctive relief requiring Defendant to remove these barriers and requests attorney's fees, litigation expenses, and costs. (*Id.* at ¶ 8.)

Plaintiff filed a Motion for Summary Judgment (Doc. No. 31) on April 28, 2012. Therein, Plaintiff argues generally that no genuine dispute of fact exists for every element of his cause of action. (*Id.*) Defendant filed a *Daubert* motion on April 30, 2012, and argues therein that Plaintiff's expert's report and testimony should be excluded. (Doc. No. 32.) Defendant then filed a Motion for Summary Judgment on April 30, 2012, and argues therein that Plaintiff has failed to provide evidence to prove his claim and that Plaintiff's case is time-barred by the statute of limitations. (Doc. No. 33.) To these motions, the Court now turns.

## II. ANALYSIS

### A. Defendant's *Daubert* Motion

Pursuant to Fed. R. Evid. 702, Defendant moves to exclude Plaintiff's expert witness, Thomas Ricci, because (1) Ricci is not qualified to testify about the matters involved, (2) Ricci's testimony is not reliable, and (3) Ricci's testimony is not helpful to the Court. *Id.*

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the

product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. To fulfill its role as a gatekeeper of admissible evidence, a court must determine whether:

(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The party offering the expert must satisfy each element by a preponderance of the evidence. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

### 1. Ricci's Qualifications to Testify as an Expert

The first prong of the Rule 702 admissibility analysis is to determine whether an expert is qualified to testify. *City of Tuscaloosa*, 158 F.3d at 562-63. "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *United States v. Frazier*, 387 F.3d 1244, 1260-61 (11th Cir. 2004). A district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address. *City of Tuscaloosa*, 158 F.3d at 563. "The qualification standard for expert testimony is 'not stringent,' and 'so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility.' " *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Kilpatrick v.*

3

*Breg, Inc.*, Case No. 08-10052-CIV, 2009 WL 2058384, at *3 (S.D. Fla. June 25, 2009) (quoting *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 585 (N.D. Fla. 2009)). "After the district court undertakes a review of all of the relevant issues and an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *Clena Invs. Inc. v. XL Specialty Ins. Co.*, No. 10-62028, 2012 WL 266422, at *6 (S.D. Fla. Jan. 30, 2012).

Defendant asserts that Ricci is not qualified as an expert because he has no formal education in construction, has authored no publications, and is not a licensed architect or engineer. (Doc. No. 32, p. 4-6.) In response, Plaintiff argues that Ricci is a certified general contractor and building inspector, has taught and attended classes about ADA compliance, and has testified as an ADA expert in nine trials. (Doc. No. 36, p. 2.) Bearing in mind that the test of an expert's qualifications is "not stringent" and that an expert need be only "minimally qualified," the Court finds that Ricci's experience in the construction industry and in ADA inspections qualifies him, pursuant to Fed. R. Evid. 702, to provide opinion testimony.

### 2. The Reliability of Ricci's Testimony

The second prong of the admissibility analysis is the reliability of an expert's testimony. The Court must ensure that an expert's testimony "rests on a reliable foundation." *Frazier*, 387 F.3d at 1261 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993)). Expert testimony must be "supported by appropriate validation-i.e., 'good grounds,' based on what is known." *Id.* (quoting *Daubert,* 509 U.S. at 590). The trial court will examine the proffered expert's methodology, but "it is not the role of the

4

district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003).

Defendant argues that Ricci's testimony is not reliable because Ricci delayed for eleven months between the time of his inspection and the writing of his report. (Doc. No. 32, p. 10-11.) Defendant also argues that Ricci applied incorrect standards in identifying barriers, proposed incomplete methods of barrier removal, and failed to assess whether his proposals were readily achievable. (Doc. No. 32, p. 15, 17.)

Ricci's delay in writing his report is relevant to impeaching the accuracy of his findings and his memory. Similarly, any mistakes Ricci might have made in taking measurements is a matter that might affect his credibility. These are issues that may affect the weight that a fact finder gives to Ricci's testimony, but they do not show Ricci's testimony to be so unreliable as to render it inadmissible. *See Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341.

### 4. The Helpfulness of Ricci's Testimony

The final prong of the admissibility inquiry is the helpfulness of an expert's testimony to the fact finder. Expert testimony is helpful only "if it concerns matters that are beyond the understanding of the average lay person." *Frazier,* 387 F.3d at 1262. Defendant argues that Ricci's method of measuring various features of the restaurant and comparing them to the ADA Standards for Accessible Design ("ADASAD"), 28 C.F.R.

Pt. 36, App. D,[1] does not help the Court resolve an issue of fact. (Doc. No. 32, p. 18.)

Even if measuring the restaurant requires no more than the ability to use a tape measure (Ricci Dep. 122:23-123:20), familiarity with the construction industry and the costs of various projects is not within the common understanding of laypeople. As such, Ricci's knowledge in this area can be helpful to the fact finder in assessing whether removal of a barrier is readily achievable.

In conclusion, the Court finds good cause to admit Ricci to offer opinion testimony pursuant to Fed. R. Evid. 702. To the extent that Defendant has highlighted deficiencies in Ricci's testimony, Defendant may challenge Ricci's credibility and conclusions through cross examination and counter expert testimony, but wholesale exclusion of Ricci's testimony is inappropriate. *See Daubert*, 509 U.S. at 596.

### B. Cross Motions for Summary Judgment

#### 1. Summary Judgment Standard

Summary judgment is appropriate only if the movant can show that "there is no genuine issue of material fact . . . ." *Fennell v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of production to show that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges his burden by showing that there

---

[1] Many, including the parties in the instant case, refer to the ADA Accessibility Guidelines ("ADAAG"). The ADAAG is not an enforceable standard; it contains only guidelines. The ADASAD, on the other hand, is a legally binding regulation issued by the Department of Justice. The ADASAD adopts the ADAAG and gives it effect of law. For the purposes of accuracy, the Court will refer to the ADASAD instead of the ADAAG.

6

is "an absence of evidence to support the nonmoving party's case." *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The Court reviews evidence "in the light most favorable to the non-moving party." *Fennell*, 559 F.3d at 1216.

If the movant satisfies this initial burden, the burden then shifts to the non-movant to identify specific facts within the record to show that there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). The non-movant must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). "[I]f factual issues are present, the court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). In the context of cross-motions for summary judgment, "the denial of one does not require the grant of another." *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F. Supp. 2d 1295, 1297 (M.D. Fla. 2008) (quoting *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007)).

### 2. Title III of the Americans with Disabilities Act

Title III of the ADA regulates private entities and provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

7

The only remedy available for a plaintiff suing under Title III is injunctive relief requiring the defendant to make its facility "readily accessible to and usable by individuals with disabilities." *Access Now, Inc. v. S. Fla. Stadium Corp.*, 161 F. Supp. 2d 1357, 1362 (S.D. Fla. 2001) (quoting 42 U.S.C. § 12188(a)(2)). A district court also has discretion to award "a reasonable attorney's fee" to the prevailing party. 42 U.S.C. § 12205.

The allure of attorney's fees and the absence of a pre-suit notice requirement, *Ass'n of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d 1357, 1359 (11th Cir. 2006), have given rise to what Judge Presnell of this Court has termed "a cottage industry" fueled by "the economics of attorney's fees." *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1280, 1282 (M.D. Fla. 2004); *see Brother v. Miami Hotel Invs., Ltd.*, 341 F. Supp. 2d 1230, 1233 (S.D. Fla. 2004) ("The Act was never intended to turn a lofty and salutary mission into a fee-generating mill for some lawyers to exploit the statutory scheme to see how many billable hours they could cram into a case before it is either tried or settled."). The current "ADA lawsuit binge" experienced by federal courts in Florida is characterized by small triumvirates of plaintiffs, lawyers, and experts filing large numbers of lawsuits within short periods of time. *Rodriguez*, 305 F. Supp. 2d at 1280, 1282.

The plaintiff in the instant case is no stranger to this "cottage industry." From July 2010 to May 2011, Plaintiff filed 152 ADA suits in the Middle District of Florida. Thomas Ricci, Plaintiff's expert witness in the instant case, has served as an expert in approximately 100 cases for Plaintiff. (Ricci Dep. 10:23-11:6.) In ninety-six of Plaintiff's cases, including the instant one, he was represented by Todd W. Shulby, the same

8

lawyer who filed 221 ADA cases for Joseph Raetano (who filed a total of 240 cases), sixty-five ADA cases for Johnny Long (who filed a total of 210 cases), and 157 ADA cases for organizations such as Access for the Disabled, Access for All, and Association for Disabled Americans, which have collectively filed a total of approximately 486 cases. Nevertheless, the Court looks at the merits of each case individually.

### 3. Discussion

For public accommodations constructed prior to January 26, 1992, such as the restaurant in the instant case, (McCaskey Decl. ¶ 3), Title III defines discrimination as the failure "to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv); *see* 28 C.F.R. § 36.304. To prevail on his Title III claim, Plaintiff must show that (1) architectural barriers exist that prevent him from gaining access; and (2) his proposed methods of removing these barriers are "readily achievable." *Access Now, Inc.*, 161 F. Supp. 2d at 1363.

Architectural barriers are "physical elements of a facility that impede access by people with disabilities." U.S. Dept. of Justice, Civil Rights Division, The Americans with Disabilities Act: Title III Technical Assistance Manual, § III-4.4000, available at http://www.ada.gov/taman3.html. For existing structures, the ADASAD provides guidance to determine whether barriers exist. Deviation from the ADASAD, without actually impeding access to the facility by a plaintiff, does not constitute a barrier; a deviation must also be an "injury in fact" to a plaintiff that impedes his access on account of his disability. *Access Now, Inc.*, 161 F. Supp. 2d at 1363.

If a court determines that a barrier exists, "[p]laintiffs bear the initial burden of suggesting a method of removal for each barrier identified, and proffering evidence that their suggested method is readily achievable." *Brother v. CPL Investments, Inc.*, 317 F. Supp. 2d 1358, 1370 (S.D. Fla. 2004). Determining "readily achievable" requires considering numerous factors:

> (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity; and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.

*Gathright-Dietrich v. Atlanta Landmarks, Inc.*, 452 F.3d 1269, 1273 (11th Cir. 2006) (quoting 42 U.S.C. § 12181(9)). "[T]he plaintiff cannot survive summary judgment without producing 'sufficient evidence to satisfy his burden that his suggested method of barrier removal is readily achievable.' " *Access Now, Inc.*, 161 F. Supp. 2d at 1371 (quoting *Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship I*, 264 F.3d 999, 1007 (10th Cir. 2001)). If Plaintiff satisfies his initial burden, Defendant then has the opportunity "to rebut Plaintiff's case by showing that removal of the disputed barrier could not be accomplished without much difficulty or expense." *Id.* at 1363.

### a. Issues Disposed of on Summary Judgment

Both parties move for summary judgment on all the alleged violations described in Ricci's report. Some of the alleged barriers described in Ricci's report can be disposed of on summary judgment because no genuine dispute of material fact exists. Summary

10

judgment is appropriate for Defendant for the dining area, the restroom sign, the urinal, the rear grab bar, and the paper towel dispenser.

### i. Dining Area

Plaintiff's Complaint alleges that the tables in the dining area of the restaurant are inaccessible for an unspecified reason, (Doc. No. 1, p. 6), but at his deposition, Plaintiff testified that there was no problem with the dining area of the restaurant. (Hoewischer Dep. 56:20-57:12.) Ricci also testified that the tables were "fine." (Ricci Dep. 148:1-7.) Thus, there is no dispute of fact that the dining area is not a barrier to Plaintiff.

### ii. Restroom Sign

Plaintiff argues that the restroom is inaccessible because it lacks accessible signage with Braille. (Ricci Report, p. 17.) Plaintiff testified that he is not visually impaired and does not read Braille. (Hoewischer Dep. 20:4-18.) Ricci also admitted that Plaintiff is not visually impaired and that any deviation from the ADASAD with regards to the sign does not create a barrier for Plaintiff. (Ricci Depo p. 173.) Taking the evidence in the light most favorable to Plaintiff, there is no dispute of fact that the sign is not a barrier for Plaintiff.

### iii. Urinal

Plaintiff argues that the urinal is a barrier to access because it is too high for a customer in a wheelchair to use and because there is insufficient clearance between the urinal and the toilet, impeding access to the toilet. (Doc. No. 38, p. 16.) Ricci recommended removing the urinal. (Ricci Report, p. 20-21); (Ricci Dep. 122:11-22.) Defendant argues that the urinal has been removed, so Plaintiff's claim is moot. (Doc. No.

33, p. 17.) Defendant's Operations Specialist, Mike McCaskey, testified that Defendant removed the urinal in response to the instant lawsuit. (McCaskey Decl. ¶ 9.) Plaintiff presented no evidence to suggest that the urinal has not been removed. (Doc. No. 38.) Therefore, Defendant has met its burden to prove the absence of a genuine dispute of fact.

### iv. Rear Grab Bar

Plaintiff argues that the lack of a rear grab bar in the restroom makes the toilet inaccessible for customers in wheelchairs. (Doc. No. 38, p. 16.) The ADASAD requires a rear grab bar to be mounted on the wall behind the toilet. ADASAD § 4.16.4; *see* ADASAD Fig. 29. Ricci testified that the restroom lacked a rear grab bar at the time of his inspection, and Plaintiff produced a photograph supporting Ricci's testimony. (Ricci Dep. 111:13-22; Ricci Report, p. 33.) Defendant argues that it installed a rear grab bar in the restroom after Plaintiff filed suit, rendering the claim moot. (Doc. No. 33, p. 17.; McCaskey Decl. ¶ 5, 11; Momenzadeh & McCaskey Dep 39:6-23, 44:1-13.) Defendant presented a photograph purporting to show that the bathroom now has a rear grab bar. (McCaskey Decl., Ex. 3-J.) Plaintiff presented no evidence to suggest that a grab bar has not been installed. Therefore, Defendant has met its burden to prove the absence of a genuine dispute of fact.

### v. Paper Towel Dispenser

Plaintiff claims that the paper towel dispenser in Defendant's bathroom is a barrier to access because it is too high for a customer in a wheelchair to reach. (Doc. No. 38, p. 16.) The ADASAD establishes a maximum height of fifty-four inches for the dispenser.

12

ADASAD § 4.2.6. Ricci's report contains a photograph showing a measuring tape next to the dispenser. (Ricci Report, p. 24.) Ricci testified that the photograph shows that the dispenser is sixty-seven inches high, which would exceed the fifty-four inch maximum allowable height. (Ricci Dep. 185:7-20.) However, review of the photograph shows that the dispenser is clearly fifty-four inches high, not sixty-seven. Even taking the evidence in the light most favorable to the Plaintiff, the dispenser is compliant with the ADASAD. Since the dispenser satisfies the ADASAD requirement, there is no genuine dispute that it is not a barrier to access.

### b. Issues for Which Summary Judgment is Inappropriate

Summary judgment is inappropriate for either party on the remaining issues. For the parking spaces, the route to the public sidewalk, the walkway to the restaurant, the entrance doors, and the bathroom door, there are genuine disputes of material fact as to whether removal of these barriers is readily achievable.

To argue that removal of these alleged barriers is readily achievable, Plaintiff pleads facts indicating Defendant's financial strength, including the fact that Defendant owns 143 restaurants, (Momenzadeh and McCaskey Dep. 23:8-20, Feb. 17, 2012, Doc. No. 38, Ex. A), and that the restaurant in question made $250,000 to $300,000 in profit in the previous year (*Id.* at 25:25-26:22.) Ricci's report estimates that the total cost of bringing the facility into compliance is $20,000. (Doc. No. 38, p. 12.) After comparing Defendant's revenues to the estimated cost of achieving compliance, Plaintiff concludes that "[i]t is simply incredible that none of these remediations could have been made in the last 22 years since the ADA was enacted." (Doc. No. 38, p. 12.) In response, to argue

13

that removal of these alleged barriers is not readily achievable, Defendant's Vice President of Operations, Abbas Momenzadeh, testified that Defendant operated at a net loss from 2007 to 2010. (Momenzadeh Decl. ¶ 2, May 29, 2012, Doc. No. 37, Ex. 5.) Plaintiff and Defendant offer no other evidence to show that removal of a particular barrier is or is not readily achievable.

The determination of whether removal of a barrier is "readily achievable" is a fact-intensive inquiry determined by balancing several factors, of which the cost of removal and the financial position of the defendant are only two. *Gathright-Dietrich*, 452 F.3d at 1273. The fact-intensive nature of this inquiry means that a determination of "readily achievable" is rarely decided on summary judgment. *Access Now, Inc.*, 161 F. Supp. 2d at 1371. Therefore, whether considering the facts above in the light most favorable to Plaintiff or Defendant, the issue of whether removal of these barriers is readily achievable is a dispute of fact.

### C. Plaintiff's Claim is not Untimely

The Court now examines whether Plaintiff's claim is barred by the statute of limitations. After review, the Court concludes that it is not. In Florida, ADA claims have a four-year limitations period. *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1409-10 (11th Cir. 1998); *see N. Star Steel Co. v. Thomas*, 515 U.S. 29, 33, 34 (1995). A cause of action under the ADA accrues when a plaintiff encounters barriers to access. *Everett*, 138 F.3d at 1410; *Moyer v. Walt Disney World Co.*, 146 F. Supp. 2d 1249, 1254 (M.D. Fla. 2000) (holding that plaintiff's Title III claim accrued when he encountered architectural barriers to access such as noncompliant bathroom facilities at defendant's theme park).

14

Defendant argues that Plaintiff's claim accrued in 2004, the first time he encountered barriers in the restaurant, and should therefore be barred by the statute of limitations. (Doc. No. 33, p. 8.) Defendant cites *Everett* for the proposition that "[f]ailure to remedy a prior act of discrimination does not constitute a new act of discrimination for the purpose of determining whether a claim is time barred." 138 F.3d at 1410 (holding that student's Title II claim accrued when she was informed of a grade change). Plaintiff asserts that his claim is about a new injury because he was injured each time he visited the restaurant and encountered a barrier. (Doc. No. 38, p. 20.) He argues that he "is not precluded from suing simply because the statute may have run on prior instances of discrimination." (Doc. No. 38, p. 20.) Therefore, the statute of limitations should begin running from the most recent injury in approximately 2008, which is within the limitations period. (Doc. No. 38, p. 20.)

The Court agrees with Plaintiff. The instant case is simply about a new injury. Plaintiff allegedly encountered barriers to access each time he returned to the restaurant. Each encounter with a barrier is a unique, distinct injury, regardless of whether Plaintiff encountered the same barrier on a previous occasion. The fact that he might have encountered the same barrier on a previous occasion does not make a later encounter less of an injury.

Since this is a case of a new injury, the limitations period began running from the time of Plaintiff's most recent injury. Plaintiff visited the restaurant in 2008 or 2009, one to two years prior to filing his Complaint, and safely within the four-year limitations period. Therefore, Plaintiff's Complaint is not barred by the statute of limitations, and Defendant's

15

motion for summary judgment as to this issue is denied.

### IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that:

1.    Defendant's *Daubert* motion (Doc. No. 32), filed on April 30, 2012, is

      **DENIED**.

2.    Defendant's Motion for Summary Judgment (Doc. No. 33), filed on May 30,

      2012, is **GRANTED IN PART** and **DENIED IN PART**. It is **GRANTED** on

      the issues of (1) the tables in the dining area, (2) the bathroom door sign,

      (3) the paper towel dispenser, (4) the urinal, and (5) the rear grab bar. It is

      **DENIED** on all other issues.

3.    Plaintiff's Motion for Summary Judgment (Doc. No. 31), filed on April 28,

      2012, is **DENIED** on all issues.

**DONE** and **ORDERED** in Chambers, Jacksonville, Florida, on July 10, 2012.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record

16